John M. Naylor
Nevada Bar No. 5435
Jennifer L. Braster
Nevada Bar No. 9982
NAYLOR & BRASTER
1050 Indigo Drive, Suite 200
Las Vegas, NV  89145
Telephone:  (702) 420-7000
Facsimile:  (702) 420-7001
Email:    jbraster@naylorandbrasterlaw.com

John A. Vogt (admitted *pro hac vice*)
Ann T. Rossum (admitted *pro hac vice*)
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA  92612.4408
Telephone:  (949) 851-3939
Facsimile:  (949) 553-7539
Email: javogt@jonesday.com
Email: atrossum@jonesday.com

*Attorneys for Defendant*
*Experian Information Solutions, Inc.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JEFFREY G. SLOANE,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No. 2:17-CV-01117-RFB-VCF<br><br>**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

## DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT

This Motion is based upon the Memorandum of Points and Authorities in Support of the Motion, declarations and exhibits attached thereto, all of the pleadings and other papers on file in this action, and upon such other and further evidence or argument that the Court may consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

This case is ripe for summary disposition.

The plaintiff, Jeffrey Sloane, was a joint obligor with his daughter, Rachel, on a Synchrony Bank account, which Synchrony Bank ultimately charged off.  When his daughter filed for bankruptcy, the debt on the account was discharged.  Sloane, a Nevada lawyer, was aware of his daughter's bankruptcy—indeed, as a joint obligor on the Synchrony Bank account, he was provided notice that the account was the subject of the bankruptcy.  Yet, he alleges that the first time he learned that the Synchrony Bank account had been charged off, and that this charge off was reflected on his personal credit report, was when he went to Audi Henderson to purchase a new car. Sloane claims that he ultimately paid cash for his new car, but filed a dispute with Experian over the reporting of the Synchrony Bank account nonetheless.  This lawsuit is about that dispute—and, more specifically, whether Experian sent Sloane the results of the reinvestigation of that dispute. Indeed, Sloane bases his entire case upon Experian's alleged failure to send him the results of the reinvestigation, as required by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"). This motion, and the mountain of incontrovertible evidence that accompanies it, demonstrates, to a summary judgment certainty, that the reinvestigation results were sent to Sloane.  Thus, his FCRA claim is meritless.

All sides agree that Sloane mailed a dispute to Experian regarding the Synchrony Bank account via a letter dated February 17, 2017.  The evidence shows that Experian, upon receiving Sloane's dispute, conducted a reinvestigation with Synchrony in a timely fashion.  The evidence further shows that, upon completion of that reinvestigation, Experian generated a CDF—or "Consumer Disclosure Final"—in connection with that reinvestigation, which updated the reporting of the account.  The evidence further shows that, after preparation of the CDF, Experian transmitted the CDF electronically to its vendor, R.R. Donnelley, for printing and mailing. The evidence further shows that R.R. Donnelley printed the CDF, placed it into an 6 x 9 envelope, bar coded the package, and sent it to Sloane.  Indeed, the U.S. Postal Service charged Experian postage for the mailing of that letter.  That Sloane apparently did not open his mail is legally

2

immaterial. *See*, *e.g.*, *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2nd Cir. 1997) ("[T]he precise question 'is not whether [Podell] *received* [the confirmation letter], but whether TRW *sent* it.'") (Italics in original).)  Because the evidence conclusively establishes that Experian conducted a reinvestigation of Sloane's dispute, and sent Sloane the results of that reinvestigation in a timely fashion, Sloane's claim under the FCRA fails, and Experian is entitled to summary judgment.

## STATEMENT OF FACTS

Plaintiff Jeffrey G. Sloane is a resident of Nevada, and a Nevada-licensed attorney.  (ECF No. 1 ("Cmpt"), ¶¶ 4 & 31.)  He was a joint account holder with his daughter, Rachel A. Sloane, on a Synchrony Bank / Care Credit account, Account No. 601918xxxxxxx (the "Synchrony Bank" account).  (*Id*., ¶ 12; Declaration of Mary Methvin ("Methvin Decl."), ¶ 6 and Exs. 1 & 2.)  In January 2016, Sloane's daughter filed for bankruptcy.  (Methvin Decl., Ex. 1.)  The debt on the Synchrony Bank account was discharged in bankruptcy.  (*See* Request for Judicial Notice, Exs. 1-4.)

In early January 2017, Sloane went car shopping at Audi Henderson.  (Cmpt., ¶ 29.)  Sloane was advised by a Finance Manager at the dealership that his credit report showed that his account with Synchrony was "charged off."  (*Id*.)  Believing that the reporting of the Synchrony Bank account as a "charge off" was inaccurate, Sloane lodged a dispute with Experian.  (Methvin Decl., ¶ 6 and Ex. 1; Cmpt., ¶¶ 12 & 13.)  Sloane made that dispute via a letter dated February 17, 2017.  (*Id*.)  Experian received Sloane's dispute letter in the mail on February 28, 2017.  (Methvin Decl., ¶ 6, Exs. 1 and 2.)  Experian assigned the following unique internal "CAP ID" to Sloane's dispute: 4190540688.  (*Id*., ¶ 7 and Ex. 2.)

Experian reinvestigated Sloane's dispute on March 7, 2017, by sending an ACDV—*i.e.*, an Automated Consumer Dispute Verification—to Synchrony Bank.  (*Id*., ¶ 8 and Exs. 2 & 3.)  On March 14, 2017, Synchrony Bank responded to the ACDV, updating Experian on how it was to report the Synchrony Bank account.  (*Id*.)  Based upon the response from Synchrony Bank, Experian created a Consumer Disclosure Final—or CDF—which reflects the changes to the reporting of the Synchrony Bank account.  (*Id*., ¶ 9 and Ex. 4.)  That CDF includes the unique internal "CAP ID" that Experian assigned to Sloane's dispute:  4190540688.  (*Id*.)

The CDF for Sloane's dispute was created on March 14, 2017. (*Id*..)   That same day, Experian transmitted the CDF to its print vendor, R.R. Donnelley. (*Id*., ¶ 10 and Ex. 2; *see also* Declaration of Lee Carstens ("Carstens Decl."), ¶ 6 and Exs. 1-4; *see also* Declaration of Cynthia Wilkerson ("Wilkerson Decl."), ¶ 4 and Exs. 1 & 2.) Sloane's CDF was included in an electronic batch file that contained records to be printed and mailed. (Carstens Decl., ¶ 6 and Exs. 1-4; Wilkerson Decl., ¶ 5 and Exs. 1 & 2.) The job number that R.R. Donnelley assigned to the printing and mailing of these records was No. 7062. (Wilkerson Decl., ¶¶ 4 & 5 and Exs. 1-4.) R.R. Donnelley's internal business records for Job No. 7062 include the unique internal CAP ID that Experian assigned to Sloane's dispute: 4190540688. (*Id*.) R.R. Donnelley obtained that unique identifying information through the data transfer from Experian to R.R. Donnelley of the batch file containing Sloane's CDF. (*Id*.) That is, R.R. Donnelley's records confirm that Experian sent Sloane's CDF to R.R. Donnelley for printing and mailing. (*Id*.)

After receipt of Sloane's CDF, R.R. Donnelley printed that record, and placed it into an envelope. (*Id*., ¶ 6.) That processing occurred on March 15, 2017. (*Id*. and Ex. 3.) The next day, the envelope containing Sloane's CDF, as well as envelopes containing all of the other individual records in Job No. 7062, were delivered to the U.S. Post Office for mailing. (*Id*., ¶¶ 7-9 and Ex. 4.) Every piece of mail that R.R. Donnelley prints and mails for Experian is bar coded, which enables R.R. Donnelley to electronically track the handling of every package. (*Id*., ¶ 6) In connection with their delivery to the post office, every bar code in Job No. 7062 was scanned, and that scanning indicates that every record in Job No. 7062, including Sloane's CDF, was delivered to the U.S. Post Office for mailing. (*Id*., ¶ 9.)

Upon the completion of a job, R.R. Donnelley creates a document entitled, "Reconciliation Summary — Mail / Shipping Services." (*Id*., ¶¶ 7-9 and Ex. 4.) That document summarizes the job, and states whether there were any issues with any particular package in the job. (*Id*.) The "Reconciliation Summary" for Job No. 7062 shows that every one of the 30,731 records in that job, which included Sloane's CDF, was mailed. (*Id*.) Sloane's CDF was mailed as part of "Copy 2." (*Id*., ¶ 5-9 and Exs. 1, 2, and 4 at p. 2.) "Copy" simply means the size of the envelope or box that was used to mail a letter. (*Id*.) In the case of Sloane's CDF, it was mailed in a 6 x 9 size

envelope.  (*Id.*)  Of the 30,731 pieces of mail contained in Job No. 7062, 8,935 of them were in "Copy 2"—*i.e.*, sent in a 6 x 9 size envelope.  (*Id.*)  Of those 8,935 packages, the postage on 8,930 of them was paid via Experian's account with the U.S. Postal Service.  (*Id.*, ¶¶ 8-9 and Ex. 4 at p. 2.)  That fact is shown on the "Reconciliation Summary" for Job No. 7062 under the heading, "Postmaster," on Copy 2. (*Id.*)  Five of the packages in Copy 2 had damage, and had to be reprinted. (*Id.*)  This fact is shown in the "Reconciliation Summary" in the row "Missing" under the column "Type."  (*Id.*)  Each of those five packages was mailed, and the postage for that mailing was paid via the "meter," as indicated on the "Reconciliation Summary" under the heading, "Meter."  (*Id.*) R.R. Donnelley reviewed its records, and has confirmed that Sloane's CDF was not one of the packages whose postage was paid via the meter because none of the five unique CAP IDs for those five packages matches the one that Experian assigned to Sloane's dispute.  (*Id.*)  In other words, R.R. Donnelley has confirmed that the postage on Sloane's CDF was paid via the "Postmaster"— *i.e.*, Experian's account with the U.S. Postal Service.  (*Id.*)

The "Reconciliation Summary" indicates that Experian paid $3,771.02 for the mailing of all Copy 2 packages sent via the "Postmaster."  (*Id.*, ¶ 8 and Ex. 4 at p. 2.)  Experian's postage receipts perfectly match R.R. Donnelley's records.  (Carstens Decl., ¶ 7 and Ex. 5.)  That is, Experian's internal records show that Experian's account was debited $3,771.02 by the U.S. Postal Service on March 16, 2017, for the mailing of all packages in Copy 2 whose postage was paid via the Postmaster for Job No. 7062.   (Carstens Decl., ¶ 7 and Ex. 5.)  Because Sloane's CDF was included in the 8,930 packages whose postage was paid via the "Postmaster," Experian mailed Sloane's CDF, and paid for the postage for that mailing.  (*Id.*)

## STATEMENT OF MATERIAL FACTS

1. Sloane mailed a letter to Experian, dated February 17, 2017, disputing Experian's reporting of a Synchrony Bank / Care Credit account, Account No. 601918xxxxxxx (the "Dispute Letter").  (Methvin Decl., ¶ 6 and Exs. 1-2.)

2. Experian received the Dispute Letter in the mail on February 28, 2017.  (Methvin Decl., ¶ 6 and Ex. 2.)

3.   Experian reinvestigated the dispute on March 7, 2017, by sending an ACDV—*i.e.*, an Automated Consumer Dispute Verification—to Synchrony Bank.  (Methvin Decl., ¶¶ 7-8 and Ex. 3.)

4.   On March 14, 2017, Synchrony Bank responded to the ACDV, updating Experian on how it was to report the Synchrony Bank account.  (Methvin Decl., ¶ 8 and Ex. 3.)

5.   Based upon the response from Synchrony Bank, Experian, on March 14, 2017, created a Consumer Disclosure Final—or CDF—which reflects the changes to the reporting of the Synchrony Bank account.  (Methvin Decl., ¶ 9 and Ex. 4.)

6.   The CDF for Sloane's dispute was mailed to him on March 16, 2017.  (Methvin Decl., ¶ 10; Wilkerson Decl., ¶¶ 5-9 and Exs. 1-4; Carstens Decl., ¶¶ 6-7.)

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also* Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 , 888 (1990); *see also Celotex*, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322; *see also Abramson v. Am. Pac. Corp.*, 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Asss'n*, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).

Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## LEGAL ARGUMENT

Sloane alleges one claim against Experian in this case.  (Cmpt., ¶¶ 38-41.)  According to Sloane's complaint, Experian is alleged to have negligently and willfully violated the FCRA for "failing to timely notify Plaintiff of the results of its reinvestigation."  (*Id*., ¶¶ 15-27; 38-41.)[1] Because the evidence establishes that Experian sent Sloane the results of the reinvestigation of his dispute in a timely fashion, the FCRA claim fails.

The FCRA requires a consumer reporting agency to conduct a reinvestigation a dispute within 30 days of its receipt.  15 U.S.C. § 1681i(a)(1)(A).  Sloane mailed his dispute to Experian via a letter dated February 17, 2017.  Experian received that dispute letter in the mail on February 28, 2017.  Thus, Experian had until March 30, 2017 to complete a reinvestigation of Sloane's dispute.  The evidence establishes that Experian conducted a reinvestigation of Sloane's dispute on March 7, 2017, by sending an ACDV to Synchrony Bank.  On March 14, 2017, Synchrony Bank responded to the ACDV, updating Experian on how it was to report the Synchrony Bank account.  Based upon the response from Synchrony Bank, Experian created a CDF, which reflects the changes to the reporting of the Synchrony Bank account.  Utilizing its print vendor, Experian mailed the CDF to Sloane on March 16, 2017.  The U.S. Postal Service charged Experian for that mailing.

That Sloane alleges that he never received his CDF is legally irrelevant.  A consumer reporting agency's reinvestigation obligation ends when the results of the reinvestigation are placed in the mail. *Podell*, 112 F.3d at 103 ("[T]he precise question 'is not whether [Podell] *received* [the confirmation letter], but whether TRW *sent* it.'") (Italics in original)); *Podell v. Citicorp Diners*

---

[1] Sloane also alleges that Experian deemed Sloane's dispute to be "frivolous," but did not notify him of that finding. (*Id*., ¶¶ 23-24, 28.)  Where a consumer reporting agency deems a dispute to be "frivolous," it need not conduct a reinvestigation of the dispute.  But Experian has testified that it did not deem Sloane's dispute to be frivolous and, in fact, conducted a timely reinvestigation of his dispute.  (Methvin Decl., ¶¶ 8-9, 11 and Exs. 3-4.)  Thus, the only issue left in the case is whether the results of that reinvestigation were sent to Sloane in a timely fashion.

1    *Club, Inc.*, 914 F. Supp. 1025, 1034 (1996) ("It is useful to reflect that the question is not whether

2    plaintiff received that communication, but whether TRW sent it."); *see also McCelland v. Experian*

3    *Info. Sols., Inc.*, No. 04 C 5686, 2006 WL 2191973, at *6 (N.D. Ill. July 28, 2006) (explaining that

4    the reinvestigation "process was completed on November 28, 2003, when Experian mailed

5    confirmation of the investigation results to Plaintiff, which is in compliance with the 30-day

6    requirement set forth in § 1681i(a)").

7         Here, it is undisputed that Experian mailed the CDF to Sloane in a timely fashion.  Sloane's

8    allegation that he did not receive the CDF in the mail is insufficient to create a triable issue of

9    material fact to defeat summary judgment.  *Podell*, 112 F.3d at 103; *Podell*, 914 F. Supp. at 1034;

10   *McCelland*, 2006 WL 2191973, at *6.  Accordingly, Experian is entitled to summary judgment on

11   Sloane's FCRA claim.

12                                   **CONCLUSION**

13        Because Experian, in a timely fashion, sent Sloane the results of the reinvestigation of his

14   dispute, Sloane's claim under the FCRA fails, and summary judgment should be entered in

15   Experian's favor.

16    Dated:  September 28, 2017.                    NAYLOR & BRASTER

17                                                   By: */s/ Jennifer L. Braster*
18                                                       Jennifer L. Braster
                                                         Nevada Bar No. 9982
19                                                       1050 Indigo Drive, Suite 200
                                                         Las Vegas, NV 89145

20                                                       JONES DAY
21                                                       John A. Vogt
                                                         Ann T. Rossum
22                                                       3161 Michelson Drive, Suite 800
                                                         Irvine, California  92612

23                                                   *Attorneys for Defendant Experian*
24                                                   *Information Solutions, Inc.*

25

26

27

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am an employee

3

of NAYLOR & BRASTER and that on this <u>28th</u> day of September 2017, I caused the document

4

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR**

5

**SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN**

6

**SUPPORT THEREOF** to be served through the Court's CM/ECF system addressed to:

7

David H. Krieger, Esq.

8

Haines & Krieger, LLC
8985 S. Eastern Avenue, Suite 350

9

Henderson, NV  89123
Email: dkrieger@hainesandkrieger.com

10

Sean N. Payne

11

Payne Law Firm LLC
9550 S. Eastern Ave., Suite 253-A213

12

Las Vegas, NV  89123
Email:  seanpayne@spaynelaw.com

13

Matthew I. Knepper

14

Miles N. Clark
Knepper & Clark, LLC

15

10040 W. Cheyenne Ave. Suite 170-109
Las Vegas, NV 89129

16

Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

17

*Attorneys for Plaintiff*

18

19

/s/ Jennifer L. Braster
An Employee of NAYLOR & BRASTER

20

21

22

23

24

25

26

27

28