David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Sean N. Payne
Nevada Bar No. 13216
PAYNE LAW FIRM LLC
9550 S. Eastern Ave. Suite 253-A213
Las Vegas, NV 89123
702-952-2733
Fax: 702-462-7227
Email: seanpayne@spaynelaw.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

|  |  |
|---|---|
| Jeffrey G. Sloane, and all similarly situated individuals, | Civil Action No.: 17-cv-1117-RFB-VCF |
| Plaintiff, | **PLAINITFF'S RESPONSE TO DEFENANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR RELIEF UNDER FRCP 56(D)** |
| v. | |
| Experian Information Solutions, Inc., | |
| Defendant. | |

Plaintiff Jeffrey G. Sloane ("Plaintiff") responds to Defendant Experian Information Solutions, Inc.'s ("Experian") Motion for Summary Judgment. This response is supported by this brief, the exhibits attached hereto, as well as the pleadings and other filings made in the case.

## INTRODUCTION

This case involves the seemingly straightforward question of whether Experian provided Plaintiff with a copy of the results of its reinvestigation of his consumer dispute as the Fair Credit Reporting Act ("FCRA")[1] required under 15 U.S.C. § 1681i. In reality, this inquiry has involved complex evaluation of numerous contracts, interpretation of Experian's precise internal terminology, and production of documents from Experian's third party mailing vendor, R.R. Donnelley ("RRD") – who Experian did not even admit existed until well into litigation. But while exploration of these factual issues is ongoing, Experian preemptively moved for summary judgment, presumably in an attempt to cut off discovery before it could be fully explored. Experian's premature motion for summary judgment must be denied for several reasons.

First, Experian's own documents, testimony, actions, as well as the declarations of others demonstrate that it has no contract with RRD which would govern any purported mailing of the reinvestigation results, or "CDF" which Experian claims to have sent to Plaintiff in this case. Not only does this suggest that Experian is engaging in a transfer of millions of similar CDFs – which contain detailed personal information and credit history of ordinary consumers – to a third party without adequate contractual safeguards in place, but also dispels any notion that RRD would have been contractually obligated to mail any CDFs on behalf of Experian. If any contract existed between Experian and RRD, it was for the mailing of "▮▮▮▮▮▮," which, by Experian's own precise internal terminology, are separate and distinct documents from CDFs. Thus, Experian's transmission of any records to RRD would not have been made as a means of giving notice of the results of reinvestigation under Section 1681i, but instead constituted the transmission of a "consumer report" under Sections 1681a(d) and 1681b. Whatever RRD did with those records after the fact is of no consequence, because the transmission cannot achieve what Experian claims it can.

---

[1] 15 U.S.C. § 1681 *et seq.*

In this context, when conjoined with Plaintiff's sworn declaration that he never received the mailing in question, summary judgment must be denied.

Second, even if the Court overlooks the factual defects present in the Motion, Experian provides no controlling authority from this Circuit suggesting that its obligations to provide notice to a consumer are immunized when it places a notification in the mail.  Of the three cases Experian musters to support its position, none suggests that discovery approached the level of factual detail present in this case, nor that the validity of the CRA's internal records was called into question. Thus, the Court should remain free to distinguish this case on its facts.

Third, even if the Court is inclined to grant Experian's motion despite its defects, adjudication should be stayed until discovery has been completed; as set out in the Declaration of Miles N. Clark the motion is premature as discovery is ongoing, and includes exploration of the documents in RRD's internal records, production of an Experian witness who can testify competently regarding Experian's contract and newly disclosed internal documents, as well as a yet-undisclosed contract between Experian Services Corp. ("Experian Services") and Experian itself – which has not yet been completed, and without which material facts remain unexplored.

For these reasons, Experian's motion for summary judgment must be denied.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Plaintiff Submits a Consumer Dispute to Experian.

1.      Plaintiff Jeffrey Sloane mailed a dispute to Experian on February 22, 2017, in which he disputed the accuracy of a tradeline reporting on his Experian credit report.[2]  With his dispute letter, he provided adequate identifying information, as well as a copy of the Experian report in question.[3]  However, Plaintiff never timely received the results of his reinvestigation.[4]  A number of additional consumers have also failed to timely receive their reinvestigations from Experian.[5]

---

[2] June 16, 2017 Declaration of Jeffrey Sloane, at ¶ 2 ("Sloane Decl."), attaching Feb. 17, 2017 dispute letter to Experian; Jan. 20, 2017 Experian Consumer Disclosure to Jeffrey Sloane; Identifying Information for Jeffrey Sloane, collectively attached at **Exhibit 1**.
[3] *See* Sloane Decl., at ¶ 3.
[4] *Id.* at ¶ 4.
[5] June 21, 2017 Declaration of Michael Alton; June 21, 2017 Declaration of Heather R. Fukunaga; June 22, 2017 Declaration of Marshall J. Zeigler; June 22, 2017 Declaration of Jane J. Joseph (collectively,

2.      Experian received Plaintiff's consumer dispute on February 28, 2017.[6]

**B.  Experian's terminology and internal documents.**

3.      Experian uses specific terminology for its internal documents, which have precise and distinct meanings.  As relevant here, a "Credit Report" is "a report that is sent to potential lenders or data furnishers, credit granters . . . from Experian, regarding a consumer product."[7]  A Credit Report is not sent to consumers.[8]  By contrast, a "consumer disclosure" is "a document that's provided to a consumer either in paper format or virtual format over the Internet that is a representation of the information that Experian has for the individual consumer."[9]  Experian has several types of consumer disclosures.  A "Consumer Disclosure Initial" (CDI) is "a document that's provided to a consumer . . . that is a representation of the information that Experian has for the individual consumer."[10]  A "Consumer Disclosure Final" (CDF) is "the investigation results provided to a consumer or reinvestigation results provided to a consumer."[11]

4.      According to Experian, a Credit Report is different from either a CDI or a CDF.[12]  Experian has continually testified that a "Credit Report" is a document fundamentally distinct from a CDI or a CDF.[13]

5.      Experian maintains a number of internal documents to purportedly show its actions in reinvestigating consumer disputes, as well as in transmitting documents to consumers.  Specifically, Experian's "Disclosure Log" is a log that is kept each time a consumer's file is accessed or a

---

"Additional Consumer Declarations"), collectively attached at **Exhibit 2**.  The exhibits attached to the Additional Consumer Declarations have been omitted.

[6]  August 18, 2017 Deposition of Mary Methvin as Experian's 30(b)(6) witness Verification Page, and Confidentiality Designations ("Methvin Depo"), at 134:20-135:2, **Exhibit 3**.

[7]  *Id.* at 43:20-44:1.

[8]  *Id.* at 44:6-7.

[9]  *Id.* at 40:15-23.

[10]  *Id.* at 40:15-41:5.

[11]  *Id.* at 41:10-16.  Additionally, a "CDF Full" means that "the consumer received the investigation results along with a copy of their full entire disclosure."  *Id.* at 41:20-25.

[12]  *Id.* at 44:2-5; *see also id.* at 40:15-44:1.

[13]  *See, e.g.*, *Travers v. Acctcorp., Inc.*, No. 16-cv-1848-RFB-PAL, ECF Dkt. 84, at 6 &* n.29 (citing Experian's 30(b)(6) testimony from two cases in this District); *see also generally* Clark Decl., at ¶¶ 8-9 (noting that in a series of depositions taken in this District, Experian's 30(b)(6) witnesses consistently distinguish between a "consumer disclosure" and a "credit report").

disclosure is created.[14]   Experian's "DR Log" is a log of any disputes that are processed on behalf of the consumer along with responses from the data furnishers or the footprint of the updates or deletes that are done.[15]

6.   There is no notation on either Experian's Disclosure Log or DR Log which reflects ███████████████████████████████████████████████████████████████████████.[16]

### C. Experian's "contract" with RRD.

7.   Experian's purported relationship with RRD is governed through a separate entity, Experian Services, Corp ("Experian Services"), who in turn contracts directly with RRD.[17]   The contract between Experian and Experian Services establishing this chain of obligations has never been produced.[18]

8.   On ████████████, Experian Services and RRD entered into a '████████ ██████████' ("MSA"), with its attachments.[19]   The MSA contained a provision which indicated that RRD did not act as Experian's agent. ████████████████████████████

██████████████████████████████████████████████████████████████████████████████[20]

████████████████████████████████████:

---

[14] Methvin Depo, at 44:8-45:1; *see also* undated Disclosure Log, EXP-SLOANE000036 ("Disclosure Log"), **Exhibit 4**.
[15] Methvin Depo, at 45:2-13; *see also* May 12, 2017 DR Log, EXP-SLOANE000037 ("DR Log"), **Exhibit 4**. This log is also known as a "Dispute Response Log." Methvin Depo, at 45:4-8. A copy of information in Plaintiff's "file" is additionally contained in Experian's "Short Admin" report. *See* Methvin Depo, at 46:24-47:7; 48:5-49:1; Short Admin Report, EXP-SLOANE000038-50, **Exhibit 4**.
[16] *See* Methvin Depo, at 107:21-108:3.
[17] *Id.* at 114:9-115:10.
[18] *See* Declaration of Miles N. Clark, at ¶ 16 ("Clark Decl."), **Exhibit B**.
[19] ██████████████████████████, EXP-SLOANE000822-847 ("MSA"), **Exhibit 5**; Methvin Depo, at 154:20-156:8. The MSA contains '███████,' which is a '██████████████████████████,' EXP-SLOANE000838-847 ("MSA Attachment A"). It is unclear when the MSA was actually entered into; it contains a number of entries for '████.' *See* Methvin Depo, at 157:24-158:24. The best the witness could say was that the top of the MSA indicated ████████████. *See id.* at 158:20-24.
[20] MSA, at EXP-SLOANE000833.

[21]

9. █████████████████████████████████████

██████████.[22]

10. █████████████████████████████████████

█████ ("Second MSA Amendment").[23]  The Second MSA Amendment

██████████████████████████.[24] ███████████████████████████

████████████████████████. ███████████████████████████████

████████████████████████.[25] ██████████████████████████████

████████:

███████████████████████████████████████

██████████████████████ ████████████████████

████.[26]

11. ████████████████████████████████████████

████,,[27] ████████████████████████████████████

██████████████████[28]  However, Experian did not seek to mail Plaintiff a copy

of his "████████," but instead a copy of his "consumer disclosure final," or "CDF."[29]  As noted

above, Experian views a "credit report" and a "CDF" as categorically distinct documents.[30]

---

[21] *Id.*

[22] *Id.* at MSA Attachment A, EXP-SLOANE000840.

[23] ████████████████████████, EXP-SLOANE000877-892 ("Second MSA Amendment"), **Exhibit 6**; Methvin Depo, at 154:20-156:8.  The amendment appears to have been signed by both parties ████████████████. *See id.* at 882.

[24] *See* Second MSA Amendment, at EXP-SLOANE000880. ████████████████████████.

[25] *See* ████████████████████████, EXP-SLOANE000890-892 ("Agency Addendum"), at EXP-SLOANE000890.

[26] *Id.* (emphasis added).

[27] *Id.* (emphasis added).

[28] *Id.* at 890 (emphasis added).

[29] Methvin Depo, at 138:19-25.

[30] *Compare* Methvin Depo, at 44:2-5, *with* Agency Addendum, EXP-SLOANE000890.

However, only "██████████," and not CDFs, were covered by the explicitly enumerated agency relationship set out in the Agency Addendum.[31]   The Agency Addendum never mentioned "CDIs," "CDFs," or even "Consumer Disclosures."[32]   Thus, in the Agency Addendum, Experian and RRD explicitly contracted out of providing print-and-mail services arising in connection with CDIs and CDFs at all, and RRD had no authority within the scope of the terms of the agency relationship to make any such mailings of CDFs.

12.   The Second MSA Amendment also contains ████████████████████ ██████████████" ("Security Requirements").[33]   Therein, RRD was required to "███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████     ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████"[34]  Appendix 2 defines "████████████████████" as "███████████ ████████████████████████████████████████████████████████████ █████████  ████ ██ ████████  ████████  ██████████  ████████ ██ ████ ████████████████████████████████████████████████████████████ ████████████████████."[35]

**D. The course of discovery in this lawsuit shows that Experian did not act as though it had a contractual relationship with RRD.**

13.   On July 5, 2017, Experian responded to Plaintiff's First Set of Interrogatories.[36]   These included Interrogatory No. 14, which requested "For any Disputes received by Experian alleged in Plaintiff's First Amended Complaint, ECF Dkt. 5, identify the date(s) on which Experian

---

[31] *See* Agency Addendum, EXP-SLOANE000890.
[32] *See id* at EXP-SLOANE000890-892.
[33] ████████████████████████████████████████████████████, EXP-SLOANE000883-887 ("Security Requirements").
[34] *Id.* at EXP-SLOANE000884.
[35] *Id.* at EXP-SLOANE000883.
[36] Experian's July 5, 2017 Responses to Plaintiff's First Set of Interrogatories ("Initial ROG Responses"), **Exhibit 7**; Clark Decl., at ¶ 6.

provided notice of its reinvestigation, or frivolous determination, to Plaintiff."[37]  Experian responded in pertinent part, "Experian communicated the results of that reinvestigation to Plaintiff via letter, which Experian sent to Plaintiff on March 14, 2017."[38]  March 14, 2017, is the date on Experian's Disclosure Log and DR Log.[39]

14.     Shortly before the deposition, Experian and Plaintiff's counsel conducted a 26-7 conference regarding Experian's objections to the deposition.  During the conference, Experian agreed to procure certain records from RRD.[40]  Approximately 600 pages of records purporting to be from RRD were produced to Plaintiff during the evening of August 16, 2017.[41]  All of these records were marked "confidential."[42]  According to the MSA, Experian would have received these records from RRD on a periodic basis.[43]

15.     The next day, August 17, 2017, and one day prior to its 30(b)(6) deposition, Experian served its amended responses to Plaintiff's Interrogatories.[44]  Therein, Experian amended its response to Interrogatory No. 14 to state in pertinent part, "Experian communicated the results of that reinvestigation to Plaintiff via a letter, dated March 14, 2017, which was mailed to Plaintiff by [RRD] on March 16, 2017."[45]

16.     At the deposition, Experian initially objected to providing any testimony regarding the terms of the "contract" with RRD.[46]  Experian was subsequently unable to testify that the contract documents introduced were the full and complete copy of the contract between Experian and RRD for printing and mail services.[47]  Plaintiff held the deposition open on the record regarding

---

[37] Initial ROG Responses, at 13; Clark Decl., at ¶ 6.
[38] Initial ROG Responses, at 13; Clark Decl., at ¶ 6.
[39] *See* Disclosure Log, at EXP-SLOANE000036; DR Log, at EXP-SLOANE000037.
[40] Clark Decl., at ¶ 21.
[41] *Id.* at ¶ 22.
[42] *Id.*
[43] MSA, EXP-SLOANE000840.
[44] Experian's August 17, 2017 Amended Responses to Plaintiff's First Set of Interrogatories, at 13 ("Amended ROG Responses"), **Exhibit 8**; Clark Decl., at ¶ 7.
[45] Amended ROG Responses, at 13; Clark Decl., at ¶ 7.
[46] *See* Methvin Depo, 77:23-82:10.
[47] *Id.* at 160:23-161:7.

8

the contract.[48]   Experian offered to produce another Experian witness to discuss the contract terms.[49] This re-deposition has not yet occurred or been scheduled.[50]

17.   After the deposition, Plaintiff received the return of a subpoena from RRD which contained documents which were substantively different than those Experian had disclosed itself.[51] Experian moved to quash the subpoena, and RRD has not yet produced any responsive records.[52]

**E. Mr. Sloane and numerous other consumers have submitted sworn declarations that they never received Experian's CDFs.**

18.   Mr. Sloane never received any mailing of the reinvestigation results that Experian claims to have sent, and has submitted a sworn declaration to that effect.[53]

19.   Numerous other consumers have similarly declared that they never timely received reinvestigation results from Experian following submission of their consumer disputes.[54]

## STATEMENT OF DISPUTED MATERIAL FACTS

1.   "The CDF for Sloane's Dispute was mailed to him on March 16, 2017."[55]   **Disputed**. As noted above, the "contract" between RRD and Experian Services reflects that any mailing of a CDF is outside the Express agency relationship between Experian Services and RRD,[56] and Experian has produced insufficient evidence and testimony to clarify its contractual relationship with RRD or whether it is entitled to benefit from any purported contract between RRD and Experian Services.[57]   Experian's Disclosure Log and DR Log – the internal Experian documents Experian's counsel relied on when attempting to argue for bifurcation of discovery earlier in the case – ██████████████████.[58]   Additionally, Experian's new claim of having records

---

[48] *See id.* at 161:8-162:15.
[49] *Id.* at 178:19-179:24.
[50] Clark Decl., at ¶ 17.
[51] *See* Plaintiff's Response to Experian's Motion to Quash, ECF Dkt. 32, at 3-4 (D. Nev. Sept. 13, 2017).
[52] *See* Clark Decl., at ¶¶ 23-24; Experian's Emergency Motion to Quash, ECF Dkt. 29 (D. Nev. Sept. 7, 2017).
[53] *See generally* Sloane Decl.
[54] *See generally* Additional Consumer Declarations.
[55] Experian's Motion for Summary Judgment, ECF Dkt. 39 ("Motion"), "Statement of Material Facts" ("SOF"), at ¶ 6.
[56] Plaintiff's Statement of Undisputed Material Facts ("SUMF"), at ¶ 10-11.
[57] *Id.* at ¶¶ 7, 10-11.
[58] *Id.* at ¶ 6.

evidencing the transmission of records to RRD – supported by evidence never provided to the Court before its status conference on Experian's request to bifurcate discovery,[59] or to Plaintiff before Experian's 30(b)(6) deposition, and which were produced three days prior to the date Experian moved for summary judgment – do not sufficiently explain the nature of those records.  Experian attempts to introduce those records through the declaration of Lee Castens, who claims that "screen shots of Experian's internal database" reflect the fact of the transmission.[60]  However, Mr. Castens never explains what these "screen shots" are, what they represent, or how they work together.[61]  Finally, the purported RRD records Experian *did* submit to Plaintiff prior to the 30(b)(6) deposition were not the same as the records RRD provided to Plaintiff in response to its subpoena request.[62]  Experian moved to quash the return of the first subpoena, and efforts to secure the records from RRD for a second time are ongoing.[63]

2.     Additionally, as outlined below, Experian's statement of "material facts" must be stricken in its entirety, as it fails to indicate which facts are "disputed" and "undisputed."[64]  Therefore, Plaintiff disputes each and every one of the statement of facts presented in Experian's motion.

### STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[65]  Material facts are those that may affect the outcome of the case.[66]  A dispute as to a material fact is genuine if there's sufficient evidence for a reasonable

---

[59] ECF Dkt. 23.

[60] Motion, Appendix Vol. I, Sept. 25, 2017 Declaration of Lee Castens, at ¶ 6 ("Castens Decl").

[61] *Compare* Motion, Appendix Vol. I, Castens Decl., at 6, *with* Motion, Appendix Vol. I, Exhibits 1-4 to Castens Decl.

[62] SUMF, at ¶ 17.

[63] *See id.*

[64] *See* Motion, at 6.

[65] Fed. R. Civ. P. 56(a).

[66] *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

jury to return a verdict for the nonmoving party.[67] "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor."[68] Summary judgment assists in part "to isolate and dispose of factually unsupported claims."[69] Nevada's Local Rule 56-1 requires that "Motions for summary judgment and responses thereto must include a concise statement setting forth each fact material to the disposition of the motion that the party claims is or is not genuinely in issue, citing the *particular portions* of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence on which the party relies."[70]

In determining whether to grant or deny summary judgment, courts apply a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."[71] But when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.[72] If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.[73]

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists.[74] To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is

---

[67] *Id.*
[68] *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).
[69] *Celotex v. Catrett*, 477 U.S. 317, 323–24 (1986).
[70] D. Nev. LR 56-1 (emphasis added).
[71] *C.A.R. Transp. Brokerage v. Darden Resorts*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).
[72] *See Celotex*, 477 U.S. at 323–24.
[73] *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).
[74] *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[75]  Thus, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by factual data.[76]  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.[77]

On summary judgment, a court's function is not to weigh evidence and determine the truth but to determine whether a genuine issue for trial exists.[78]  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor."[79]  However, summary judgment may be granted if nonmoving party's evidence is merely colorable or is not significantly probative.[80]

## DISCUSSION

**A. The FCRA's statutory framework requires Experian to timely notify Plaintiff of the results of a reinvestigation.**

When a consumer reporting agency ("CRA") receives notice of a consumer dispute, the CRA has the duty to conduct a reasonable reinvestigation to determine whether the disputed information contained in the consumer's file is inaccurate.  The FCRA provides the procedural framework for a reasonable reinvestigation at 15 U.S.C. § 1681i.  Section 1681i permits a consumer to dispute information in a consumer's "file" with a consumer reporting agency ("CRA").[81]  After receipt of a consumer's dispute, a CRA must conduct a reasonable reinvestigation of each disputed item to determine whether the disputed information was inaccurate, and requires the CRA to provide the disputed information to the relevant furnishers of that information, as applicable, no later than five days after receipt of a consumer's dispute.[82]

The CRA is required to conduct this reinvestigation before the end of the 30-day period after

---

[75] *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).
[76] *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).
[77] *See Celotex*, 477 U.S. at 324.
[78] *See Anderson*, 477 U.S. at 249.
[79] *Id*. at 255.
[80] *See id.* at 249–50.
[81] 15 U.S.C. §§ 1681i(a)(1).
[82] *Id*. at § 1681i(a)(2)(A).

receiving notification of the dispute.[83]  This period can be extended for not more than 15 days if the CRA receives additional relevant information from the consumer during the 30-day reinvestigation period.[84]  The CRA is then obligated to provide the consumer with, among other things, "(i) a statement that the reinvestigation is completed; [and] (ii) a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation."[85]

Customarily, a CRA negligently violates section 1681i when the following elements are met:

(1) plaintiff's credit file contains inaccurate or incomplete information; (2) plaintiff notified the credit reporting agency directly of the inaccurate or incomplete information; (3) plaintiff's dispute is not frivolous or irrelevant; (4) the credit reporting agency failed to respond to plaintiff's dispute; (5) the failure to reinvestigate caused plaintiff to suffer damages; (6) actual damages, such as damages caused by humiliation, mental distress, or injury to reputation or creditworthiness, resulted to plaintiff.[86]

In the case of a willful violation, because the FCRA provides for money damages *in lieu* of actual damages, a plaintiff doesn't need to prove damages and causation to maintain a Section 1681i cause of action.  Thus, Plaintiff can prove either (i) damages and causation to get to negligence, or simply (ii) that the CRA's failure to reinvestigate reasonably was willful.[87]  A finding of either negligent or willful liability results in an award of reasonable attorney's fees and costs.[88]

Experian moves for summary judgment on only one issue: whether it is undisputed that Experian ever provided the reinvestigation results, or CDF, to Plaintiff or not.  Based on the premature record presently before the Court, the answer is that the undisputed material facts are not sufficient to reach this conclusion.

---

[83] *Id.* at § 1681i(a)(1)(A).

[84] *Id.* at § 1681i(a)(1)(B).

[85] *Id.* at § 1681i(a)(6)(B)(i), (ii).

[86] *Carvalho v. Equifax*, 588 F. Supp. 2d 1089, 1095 (N.D. Cal. 2008) ("*Carvalho I*"), *aff'd*, 629 F.3d 876 (9th Cir. 2010) ("*Carvalho II*") (citing *Thomas v. Trans Union*, 197 F. Supp. 2d 1233, 1236 (D. Or. 2002)).

[87] *Saenz v. Trans Union*, 621 F. Supp. 2d 1074, 1082 (D. Or. 2007).  The requirement that a FCRA plaintiff seeking to prove willfulness need not establish damages and causation has been recently supported by other courts in this District.  *See, e.g.*, *In re Ocwen Loan Servicing LLC Litig.*, 2017 WL 1289826, at *5 (considering violation of 15 U.S.C. § 1681b); *Smith v. One Nevada Credit Union*, No. 16-cv-2156-GMN-NJK, 2017 WL 2803169 (D. Nev. June 27, 2017) (interpreting *In re Ocwen*).

[88] 15 U.S.C. §§ 1681n, 1681o.

**B. Experian has no contract with RRD for the mailing of CDFs, and any transmission of the CDF to Plaintiff was performed by a third party.**

Plaintiff has submitted a sworn declaration that he never received the results of Experian's reinvestigation, (i.e., a CDF) from Experian in connection with his consumer dispute; numerous other consumers have declared the same.[89]   Experian's internal Disclosure Log and DR Log do not ████████████████, and Experian's shifting interrogatory answers demonstrate its own internal confusion about what mailing, if any, occurred.[90]   This confusion likely occurs because RRD and Experian don't have a contract for mailing of CDFs at all;[91] and any document Experian may have sent to RRD wasn't made within the scope of RRD's agency relationship made to satisfy Experian's reinvestigation-notice obligations under 15 U.S.C. 1681i, but instead, must have been a transmission of a "consumer report" to a third party under 15 U.S.C. §§ 1681a(d) and 1681b.

Because Experian's Disclosure Log and DR Log do not show ████████████████ ████████████,[92] Experian's entire argument attempting to establish the fact of mailing must hinge on its relationship with RRD.   However, no contract directly linking Experian and RRD, or linking Experian to the benefits of the contract between Experian Services and RRD, has ever been produced.[93]   But presupposing existence of this contract is apropos of nothing.   The MSA originally provided that ████████████████████████████████████████████████████ ████████.[94]   In February 2016 Experian Services thought better of this, and in the Second MSA Amendment   replaced   an   ██████████████████████████████████████ ████████████████████████████████████████████████████████████," not "Consumer Disclosures" or "CDFs."[95]   The distinction is more than ministerial; Experian considers "credit reports" and "CDFs" to be fundamentally distinct documents, with separate

---

[89] SUMF at ¶ 1.
[90] Id. at ¶ 6.
[91] See id. at ¶¶ 7-12.
[92] Id. at ¶ 6.
[93] Id. at ¶ 7.
[94] Id. at ¶  8.
[95] Id. at ¶¶ 10-11.

purposes, which are sent to different types of persons.[96]  Any purported mailing of Plaintiff's CDF exceeded the scope of RRD's agency relationship with Experian.

Nor do Experian's actions suggest that it continued to abide by the "contract" in question. First, Experian's discovery requests showed confusion over whether its own documents showed the fact of mailing.  Its July 5, 2017 responses to Plaintiff's Interrogatory No. 14 stated, "Experian communicated the results of that reinvestigation to Plaintiff via letter, which Experian sent to Plaintiff on March 14, 2017."[97]  However, one day prior to the deposition, Experian changed its mind and claimed that "Experian communicated the results of that reinvestigation to Plaintiff via a letter, dated March 14, 2017, which was mailed to Plaintiff by [RRD] on March 16, 2017."[98]

The timing of this change is critical given the documents at Experian's disposal.  If Experian truly believed the "contract" in question governed the mailing of CDFs, it would have had records from RRD showing that the "mailing" had occurred.[99]  Specifically, the MSA provides that ███

███████████████████████████████████████████████████████

███████████.[100]  If Experian had retained copies of its internal records, it would have been able to answer Interrogatory No. 14 differently when it first answered on July 5, 2017.  However, it was only on August 17, 2017 – after Experian obtained copies of records from RRD – that Experian changed its answers.[101]

More troublingly, Experian has acted in a manner inconsistent with the "contract's" privacy requirements.  Specifically, the Second MSA Amendment's Security Requirements required ███

███████████████████████████████████████."[102]  Experian produced approximately 600 pages of RRD documents to Plaintiff on August 17, 2017 (one day prior to Experian's 30(b)(6) deposition), with each page marked "confidential."[103]  However, in its Motion

---

[96] *Id.* at ¶¶ 3-4.
[97] *Id.* at ¶ 13.
[98] *Id.* at ¶ 14.
[99] *See id.* at ¶¶ 5-6.
[100] *Id.* at ¶ 9.
[101] *Id.* at ¶ 15.
[102] *Id.* at ¶ 12.
[103] Clark Decl., at ¶ 22.

for Summary Judgment Experian then produced RRD's entire production – which contained the CAPIDs of thousands of individual consumers – *into the public record*, notwithstanding RRD's presumed designation of confidentiality. Experian then declined to withdraw and re-file the document under seal after being notified by Plaintiff's counsel.[104] The only explanation for Experian's unilateral decision to abandon the confidentiality of RRD's third party business records is that it does not consider them to be ███████████████" transmitted in accordance with the contract, but instead merely RRD's independent compilation of third party "credit reports" which Experian provided.

Thus, Experian is bereft of a contract whose plain terms permitted it to utilize RRD as its mailing agent to comply with its obligations to notify Plaintiff of the results of its reinvestigation of his consumer dispute via CDF under 15 U.S.C. § 1681i. Experian's actions in failing to retain reports RRD would have sent it under the "contract's" terms, or its dispensing of the "contract's" explicitly enumerated confidentiality provisions, are strong evidence of the same. Accordingly, assuming Experian in fact transmitted data containing Plaintiff's CDF to RRD, it did not do so in order to fulfill its Section 1681i notice obligations. Instead, Experian transmitted this data to third party RRD as a "consumer report" under 15 U.S.C. §§ 1681a(d) and 1681b.[105] Whatever RRD did with the data after that point is of no consequence, because Experian could not possibly have completed the process of mailing Plaintiff's reinvestigation to him. Unsurprisingly, Plaintiff was willing to submit a sworn declaration that he never received the CDF,[106] and numerous other consumers have declared the same.[107]

---

[104] *Id.* at ¶¶ 25-26.
[105] 15 U.S.C. § 1681a(d) defines "consumer report," whereas 15 U.S.C. § 1681b provides a list of permissible purposes for which information can be sent from a consumer reporting agency like Experian to a third party.
[106] SUMF, at ¶¶ 1, 18.
[107] *Id.* at ¶¶ 1, 19.

In the here and now, the troubling issues surrounding the assumed relationship between Experian and RRD, conjoined with Plaintiff's sworn declaration, demonstrate that Experian is not entitled to summary judgment.[108]

**C. Experian cites no binding precedent for its contentions, because there is none.**

Experian's 1.5 page argument contends that "A consumer reporting agency's reinvestigation obligation ends when the results of the reinvestigation are placed in the mail."[109]   As noted above, it is an entirely open question whether Experian ever completed this step.   But even if it had, Experian points to no controlling Ninth Circuit authority to support this proposition.   Instead, Experian cites to *Podell*, a Second Circuit case which is factually distinguishable.   Specifically, on appeal from the trial court's granting of summary judgment in favor of Experian (then known as TRW), the Second Circuit found that TRW's *records* showed that "an updated credit report confirming TRW's reinvestigation . . . was mailed to Podell on August 13, 1991."[110]

There is no evidence from the *Podell* decision that Plaintiff challenged the foundation of the records in TRW's own files, or explored the fact of mailing in the depth which Plaintiff has done in this case.[111]   Nor does the trial court opinion in the *Podell* case indicate anything more than the fact that TRW's own employee "confirm[ed] . . . the investigation results was mailed to plaintiff."[112]   Indeed, the *Podell* trial court may have stopped short of the mark, as it relied entirely on the declaration of a TRW employee, who apparently confirmed the fact of mailing based on "computer-generated TRW documents."[113]   Experian's only other citation is to the unpublished case of *McClelland v. Experian*, a decision premised on even thinner facts than *Podell* – i.e., one that cites

---

[108] It is greatly troubling that if Experian's argument is to be believed, the company has sent presumably millions of CDFs – containing a wealth of personal consumer information and detailed credit history – to a third party with whom its "contract" expressly carved out any performance obligations and whose privacy provisions could not be applied.

[109] Motion, at 7.

[110] *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 102 (2d Cit. 1997).

[111] *See id.*

[112] *Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1028 (S.D.N.Y. 1996).

[113] *Id.* at 1032.

zero evidence of *any* of the sources of authority the Court relied on to reach its conclusion that a reinvestigation had been mailed.[114]

Unlike *Podell*, the facts of this case confound a similarly straightforward confirmation of mailing by Experian's own employee, because Experian's 30(b)(6) deponent admitted that its own internal Disclosure Log and DR Log did not ███████████████████████.[115]  Indeed, Experian demonstrated confusion over the seemingly basic fact of when any disclosure was mailed, as it originally claimed in its Interrogatory responses that mailing had occurred on March 14, 2017; only after review of RRD's contradictory records did Experian decide the mailing date had actually been March 16, 2017.[116]  Additionally, there is no indication that the *Podell* court uncovered any relationship with a third-party mailing vendor (if any such relationship existed), let alone exposed the fundamental flaws in the contract in question.

Thus, even if the Court is inclined to look to the *Podell* and *McClelland* decisions for persuasive guidance, those cases are thoroughly distinguishable.  Instead, the Court should find that where foundational documents governing transmission and mailing of consumer data are called into question, as they are in this case, summary judgment is not appropriate.

### D. Experian's Motion fails to comply with Local Rule 56-1 in presenting its evidence, and the motion can be denied without reaching its merits on these grounds alone.

Nevada's Local Rule 56-1 requires that "Motions for summary judgment and responses thereto must include a concise statement setting forth each fact material to the disposition of the motion that the party claims is or is not genuinely in issue . . . ."[117]  Other District of Nevada courts have noted that failure to clarify "which facts may be disputed or undisputed" fails to comply with this District's Local Rule 56-1, which "alone justifies denial of the motion without reaching its merits."[118]

---

[114] No. 04 C 5686, 2006 WL 2191973, at *1 (N.D. Ill. July 28, 2006).
[115] SUMF, at ¶ 6.
[116] *Id.* at ¶¶ 13-15.
[117] D. Nev. LR 56-1.
[118] *John Bordynuik Inc. v. JBI, Inc.*, No. 13-cv-1463-RFB-VCF, 2015 WL 153439, at *3 (D. Nev. Jan. 13, 2015).

Experian's statement of "material facts" must be stricken in its entirety, as it fails to indicate which facts are "disputed" and "undisputed."[119]  Moreover, Experian provides a "statement of facts" and a "statement of material facts," without specifying which facts are undisputed or not, or whether any of the "statement of facts" are material.[120]  Since Experian has failed to comply with this District's local rule by specifying which facts in its premature motion are disputed, undisputed, or even whether many of the facts are "material," the Court should deny the motion without reaching its merits.

### E. Even if the Court is inclined to grant summary judgment, it should permit relief under Rule 56(d) as discovery is not yet complete and Experian has failed to produce material documents.

Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[121]  The Ninth Circuit has held that "a district court should continue a summary judgment motion upon a good faith showing by an affidavit that the continuance is needed to obtain facts essential to preclude summary judgment."[122]  This requires a showing in an affidavit (1) the specific facts to be obtained from further discovery, (2) that the facts exist, and (3) the sought-after facts are essential to resist the summary-judgment motion.[123]

In this case, discovery is not yet closed and certain critical records have yet to be produced. Specifically, Plaintiff has not yet obtained documents from RRD itself which it can use on summary judgment;[124] Experian moved to quash Plaintiff's first subpoena, from which Plaintiff obtained records which were different from those Experian produced from RRD.[125]  Because Experian did not mail any reinvestigation in this case, obtaining these records from RRD is critical, and any

---

[119] *See* Motion, at 6.
[120] *See id.* at 3-6.
[121] Fed. R. Civ. P. 56(d).
[122] *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).
[123] *Id.* at 779.
[124] Clark Decl., at ¶¶ 22-24.
[125] *See generally* Motion to Quash; Clark Decl. at ¶¶ 22-24.

distinction between the records RRD produces in response to a subpoena, and those it produced to Experian for dissemination to Plaintiff three days before Experian's 30(b)(6) deposition, will be probative of Experian's ability to establish the fact of mailing at all.[126]

Additionally, Experian never produced a competent 30(b)(6) witness to testify regarding the terms and conditions of the "contract" between RRD and Experian Services.   At the deposition, Experian objected to providing any testimony regarding the terms of the "contract" it had produced between Experian Services and RRD.[127]   Plaintiff held the deposition open on the record regarding the contract.[128]   Experian offered to produce another Experian witness to discuss the contract terms.[129]   This has not yet occurred.[130]   It would be manifestly unfair for Experian to produce an unprepared 30(b)(6) witness, and then rely on a unilateral reinterpretation of contractual provisions without providing a witness who can testify about the terms and conditions with more specificity.[131]

Further, Experian only provided the "internal" documents it then sought to introduce to establish that it had in fact transmitted Plaintiff's CDF to RRD *three days* before it moved for summary judgment, and well after the 30(b)(6) deposition.[132]   These code-heavy, non-intuitive documents have never been inquired into, and Mr. Castens' declaration fails to provide any meaningful detail about precisely what these documents are and how they are used.   Further targeted discovery, and perhaps a limited 30(b)(1) deposition, are essential in order to explore what these documents are, as well as how and when Experian generated and used them, before either Plaintiff or the Court can conclude that they actually represent evidence of transmission of anything.[133]

Finally, Experian has never provided the actual agreement establishing its entitlement to rely on the contract between Experian Services and RRD.[134]   Assuming the Court finds that Experian Services' contract with RRD, despite its explicit restrictions, nonetheless provides for the mailing of

---

[126] Clark Decl., ¶¶ 20-24.
[127] SUMF, at ¶ 16; Clark Decl., at ¶ 17.
[128] SUMF, at ¶ 16; Clark Decl., at ¶ 17.
[129] SUMF, at ¶ 16; Clark Decl., at ¶ 17.
[130] Clark Decl., at ¶ 17.
[131] *Id.*
[132] *Id.* at ¶ 18.
[133] *Id.* at ¶¶ 18-19.
[134] *Id.* at ¶¶ 15-16.

CDFs, unless Plaintiff has the opportunity to review the underlying agreement between Experian and Experian Services, it is impossible to appreciate the scope of Experian's utilization of the "contract."[135]

## CONCLUSION

For the reasons stated above, Experian's motion for summary judgment should be denied, or alternatively, the Court should permit relief under Rule 56(d).

Dated: October 19, 2017                    Respectfully submitted,


*/s/ Miles N. Clark*
Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Ste. 170-109
Las Vegas, NV 89129

Sean N. Payne, Esq.
PAYNE LAW FIRM LLC
9550 S. Eastern Ave. Suite 253-A213
Las Vegas, NV 89123

David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123

Attorneys for Plaintiff

---

[135] *Id.*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on October 19, 2017, and pursuant to the Federal Rules of Civil Procedure, a

3

true and correct copy of the foregoing **PLAINITFF'S RESPONSE TO DEFENANT EXPERIAN**

4

**INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT OR,**

5

**ALTERNATIVELY, FOR RELIEF UNDER FRCP 56(D)** was served via the U.S. District Court's

6

electronic filing system to all individuals entitled to receive notice of the same.

7

8                                       /s/ Lucille Chiusano
                                        Knepper & Clark LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28