1  John M. Naylor
   Nevada Bar No. 5435
2  Jennifer L. Braster
   Nevada Bar No. 9982
3  NAYLOR & BRASTER
   1050 Indigo Drive, Suite 200
4  Las Vegas, NV  89145
   Telephone:  (702) 420-7000
5  Facsimile:  (702) 420-7001
   Email:    jbraster@naylorandbrasterlaw.com
6
   John A. Vogt (admitted *pro hac vice*)
7  Ann T. Rossum (admitted *pro hac vice*)
   JONES DAY
8  3161 Michelson Drive
   Suite 800
9  Irvine, CA  92612.4408
   Telephone:  (949) 851-3939
10 Facsimile:  (949) 553-7539
   Email: javogt@jonesday.com
11 Email: atrossum@jonesday.com

12

13 *Attorneys for Defendant*
   *Experian Information Solutions, Inc.*

14                **UNITED STATES DISTRICT COURT**

15                     **DISTRICT OF NEVADA**

16

| | |
|---|---|
| 17  JEFFREY G. SLOANE, | Case No. 2:17-CV-01117-RFB-VCF |
| 18       Plaintiff, | **DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| 19       v. | |
| 20  EXPERIAN INFORMATION SOLUTIONS, INC., | |
| 21       Defendant. | |

**INTRODUCTION**

Plaintiff's opposition does everything but address the single issue framed by Experian's motion for summary judgment—namely: Did Experian send Plaintiff the results of his reinvestigation request within 30 days as required by law? The uncontroverted evidence conclusively establishes that Plaintiff's reinvestigation results were mailed to Plaintiff on March 16, 2017—well within the 30 days required by the FCRA. The uncontroverted evidence further shows that Experian paid the U.S. Postal Service for that mailing. Because the law requires Experian to *send* the reinvestigations results, *see Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2nd Cir. 1997), it is immaterial that Plaintiff claims to have never received them in the mail. *Id*. Accordingly, Experian is entitled to summary judgment.

**LEGAL ARGUMENT**

Unable to refute the irrefutable—*i.e.*, that Experian, through its print vendor, mailed Plaintiff his reinvestigation results on March 16, 2017, thus satisfying its obligation under the FCRA—Plaintiff erects a series of strawman arguments to distract from the core issue presented. As demonstrated below, none of Plaintiff's arguments withstand scrutiny.

**I.     The "Experian Did Not Designate A Witness On the Terms Of The R.R. Donnelly Contract" Excuse**

Plaintiff contends that the resolution of this motion should be placed on hold because Experian supposedly did not designate a Rule 30(b)(6) witness on the "terms of the contract" between Experian and R.R. Donnelly. (Opp., ECF No. 49, at 8-9.) The Court should reject that excuse because Plaintiff *never asked* for such a witness.[1] Instead, Plaintiff requested a witness on Experian's "*relationship*, if any, with any Third Party to whom You assigned, contracted with, or otherwise delegated any aspect of Your obligations under" Sections 1681i and 1681e(b) of the FCRA. (*Id*., Topic 15 (emphasis added).) In response to that topic, Experian designated Mary Methvin, who testified that Experian has a contractual relationship with R.R. Donnelly ("RRD"), which serves as Experian's vendor for purposes of printing and mailing records, including

---

[1] Although Plaintiff attaches various exhibits to his opposition, he omits the Rule 30(b)(6) deposition notice. A true and correct copy of that notice is attached as Exhibit 1 to the accompanying Reply Declaration of John A. Vogt ("Reply Vogt Decl.").

1  Plaintiff's CDF.[2] Plaintiff concedes that Experian, on August 18, 2017, offered to provide Plaintiff with a witness on the issue of the terms of the Experian / RRD contracts. (*See* Opp. at 9; *see also* Methvin Dep. at 165-166, 177-179 (Experian's counsel offering to provide such a witness).) Yet, over two months later, Plaintiff still has not served Experian with a deposition notice on this topic. (*See* Reply Vogt Decl., ¶ 2(a).) Nor, if Plaintiff thought his original deposition notice covered such topic, moved to compel production of such a witness. (*Id.*) Thus, this excuse rings hollow.

II.   **The "Experian Has No Contract With R.R. Donnelly To Mail CDFs" Excuse**

Even though the evidence conclusively establishes that RRD mailed Plaintiff's CDF on March 16, 2017, Plaintiff contends that this mailing somehow does not count because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. at 2, 6-7, 14-17.) Not only does this argument grossly misread the contracts, but it ignores a key RRD / Experian agreement that Plaintiff chose to omit from his opposition evidence—*i.e.*, the "Statement of Work" between Experian and RRD ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*See* Reply Vogt Decl., Ex. 4.) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Plaintiff's Appendix, Ex. 5 at 3.)[3]

---

[2] *See* Exhibit 3 to Plaintiff's Appendix of Exhibits [Deposition of Mary Methvin ("Methvin Dep.")] at 63-64, 70-71. In response to Topic 16, which asked for a witness on any "contracts . . . *related to Topic 15*," *see* Reply Vogt Decl., Ex. 1, Topic 16 (emphasis added)," Ms. Methvin testified that Experian's Master Services Agreement ("MSA") with RRD set forth Experian's relationship with RRD for purposes of Experian's compliance with Sections 1681i and 1681e(b) of the FCRA. (Methvin Dep. at 63-64, 70-71.)

[3] The contract between Experian and RRD, entitled "Master Services Agreement," was entered into by Experian Services, Corp. (*Id.* at 1.) On behalf of Experian, Ms. Methvin testified that: (1) Experian Services Corp. "is an affiliated entity with Experian Information Solutions," (2) "[t]here is a separate agreement between Experian Services Corp. with Experian Information Solutions," and (3) "by virtue of that agreement, Experian Information Solutions obtained RR Donnelley's mailing services[.]" (Methvin Dep. at 114.) Plaintiff never propounded a discovery request seeking the separate agreement between Experian Services and Experian Information Solutions, Inc. (Reply Vogt Decl., ¶ 2(b) and Ex. 2.) And, although counsel for Experian expressly invited Plaintiff to propound a PMK topic on the issue ("I think it's probably best, Miles, if you -- if you did -- served a PMK topic"), *see* Methvin Dep. at 178, Plaintiff never did so. (Reply Vogt Decl., ¶ 2(b).)

1  The scope of the Services that RRD provided to Experian under the MSA are set forth in
2  Attachment A to the contract. (Plaintiff's Appendix, Ex. 5 at 3.) ████████
3  ████████████████████████████████████████████████████████████████████████
4  ████████████████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████████████████
12 ████ Although the terms of the contract are clear on their face—*i.e.*, that Experian retained
13 RRD to print and mail CDFs—Ms. Methvin, on behalf of Experian, specifically testified that
14 Experian retained RRD to mail CDFs. (Methvin Dep. at 63-64 ("Q. So, you mentioned
15 RR Donnelley is a print vendor. Can you tell me what tasks RR Donnelley performs, let's say? A.
16 Well, they print and mail correspondence that Experian has with consumers, including disclosures,
17 reinvestigation results, as well as letters."); *id*. at 70-71 ("Q. And does Experian . . . utilize RR
18 Donnelley to send those CDFs to a consumer? A. Yes, sir.").)
19     The MSA has a provision ████████████████████████████████████
20 ████████ (Plaintiff's Appendix, Ex. 5 at § 18.3.) ████████████████████████
21 ████████████████████████████████████████████████████████████████████████
22 ████████████████████████████████████████████████████████████████████████
23 ████████████████████████████████████████████████████████████████████████
24 Plaintiff contends that, because Experian, for its own internal purposes, does not refer to CDFs as
25 "credit reports," but instead, refers to CDFs as "consumer disclosures," *see* Opp. at 4, this must
26 mean that, ██████████████████████████████████████████████████████████
27 ██████████████████████████████ (*Id*.) The argument is nonsensical. ████████████
28 ████████████████████████████████████████████████████████" Furthermore,

4

1 ███████████████████████████████████████████████████████████████
2 ███████████████████████████████████████████████████████████████
3 ███████████████████████████████████████████████████████████████
4 ███████████████████████████████████████████████████████████████
5 ███████████████████████████████████████████████████████████████
6 ████████████████████████████████████████████████

7   This conclusion is underscored by the fact that, on January 13, 2017, Experian and RRD entered into a Statement of Work ("SOW"), ████████████████████████ ███████████████████████████████████████████████████████ (*See* Reply Methvin Decl., ¶ 3.) The SOW was entered into *after* the parties ████████████ ████████████████████████ The SOW specifically says that ██████████ ████████████████████████████████████████████ (Reply Vogt Decl., Ex. 4 at 2.) The "Master Services Agreement v. 11.4.09" is what is attached as Exhibit 5 to Plaintiff's Appendix, and ███████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████ (Reply Vogt Decl., Ex. 4 at 7-9, 24.) ████████████████████████████ (*Id.*) █████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████

  In short, no amount of obfuscation will change the fact that Experian hired RRD to print and mail CDFs. That is exactly how the parties understood their contracts to operate, as RRD, to this day, continues to print and mail CDFs for Experian. (Methvin Dep. at 63-64; 70-71, 189.)[4]

---

[4] Plaintiff argues that Experian violated the "privacy" terms of its contract with RRD by publicly filing the documents RRD produced in connection with this motion. (Opp. at 15-16.) That is not true. The documents in questions are *RRD's own business records*, which RRD did not designate as confidential. (Reply Vogt Decl., ¶ 3.) When Experian initially obtained those records in preparation for its deposition, Experian designated them as confidential in an abundance of caution. (*Id.*) In moving for summary judgment, however, Experian learned that RRD, in response to Plaintiff's initial subpoena, produced the identical records to Plaintiff but did not designate them as confidential. (*Id.*) Further, in opposing Experian's motion to quash that subpoena, counsel for

**III.     The "Experian Did Not Act Like It Had A Contract With RRD" Excuse**

As his next excuse to avoid summary judgment, Plaintiff contends that Experian, during the "course of discovery in this lawsuit . . . did not act as though it had a contractual relationship with RRD." (Opp. at 7-9.)  This argument has nothing to do with the issue framed by Experian's motion—*i.e.*, did Experian send Plaintiff his CDF.  Regardless, the evidence that Plaintiff cites does not support his conclusion.

First, Plaintiff contends that Experian amended its interrogatory response on the question of when Experian provided notice of its reinvestigation results to Plaintiff. (Opp. at 7-8.)  In its initial responses, Experian answered that it "communicated the results of that reinvestigations to Plaintiff via letter, which Experian sent to Plaintiff on March 14, 2017." (Plaintiff's Appendix, Ex. 7 at 13.)  Before its deposition, Experian amended its answer to this interrogatory to provide: "Experian communicated the results of that reinvestigation to Plaintiff via a letter, dated March 14, 2017, which was mailed to Plaintiff by [RRD] on March 16, 2017." (Plaintiff's Appendix, Ex. 8 at 13.)  Although Plaintiff's opposition brief ignores it, Ms. Methvin testified regarding why Experian amended its answer.  As Ms. Methvin explained, in preparation for her testimony as a 30(b)(6) witness, she reviewed RRD documents and had conversations with RRD personnel. (Methvin Dep. at 186-221.)  During that preparation, she learned that, although "Experian submitted the reinvestigation results on March 14th and the letter's dated March 14th, technically speaking, it didn't physically arrive at the post office until March 16th." (*Id.*, at 221.)  Accordingly, "in the interest of being completely transparent," Ms. Methvin testified that she "felt that that was an important note to add" to the discovery responses in advance of the deposition. (*Id.*)  Plaintiff

---

Plaintiff produced those same documents to Experian in court without designating them as confidential. (*Id.*)  Thus, because RRD already had produced those records to Plaintiff without designating them as confidential, and Plaintiff in turn, produced them to Experian in court without designating them as confidential, Experian did not designate RRD's records as confidential in moving for summary judgement. (*Id.*)

Plaintiff also chides that RRD's documents contain CAP IDs, which now have been filed "*into the public record*." (Opp. at 16 (emphasis in original).)  But neither RRD nor Plaintiff designated such documents as confidential. (*Id.*, ¶ 4.)  Moreover, a CAP ID does not identify any consumer, as evidenced by the fact that Plaintiff lodged no objections to the filing of his own CAP ID into the public record. (*Id.*)

6

has not come forward with any contrary evidence to rebut that his CDF was deposited with the post office on March 16, 2017, which is fatal to his case.

<u>Second</u>, Plaintiff argues that "Experian initially objected to providing any testimony regarding the terms of the 'contract' with RRD." (Opp. at 8.) But as demonstrated above, the reason Experian lodged that objection was because Plaintiff never propounded a 30(b)(6) deposition topic on the issue. (Reply Vogt Decl., Ex. 1.) Nonetheless, Ms. Methvin repeatedly was allowed to testify regarding the terms of the contract. (Methvin Dep. at 165 ("[Y]ou didn't ask us to produce a witness who is a PMK on the terms of the contract between Experian and RR Donnelley. I'm letting her answer these questions because we're here and you've got the contract in front of her."); *see also id*. at 158:14-24, 159:3-160:22, 164:1-21, 166:20-174:1, 179:25-182:17 (Ms. Methvin testifying about the terms of the contract).)

<u>Third</u>, Plaintiff argues that Experian was "unable to testify that the contract documents introduced [at deposition] were the full and complete copy of the contract between Experian and RRD for printing and mail services." (Opp. at 8.) That is untrue. Counsel for Experian, on the record, represented that Experian "produced all the contracts." (Methvin Dep. at 165.) But counsel for Experian went one step further, e-mailing his office during the deposition to confirm that all contracts were produced: "I just sent an email just to make sure that all of the contracts between Experian and RR Donnelley were produced and so I hopefully I'll get an answer to that before you wrap up. If not, we'll follow up." (*Id*. at 166.) Minutes later, counsel for Experian confirmed, again, that all contracts were produced. (*Id*. at 177.)

<u>Fourth</u>, Plaintiff argues that, after taking Experian's deposition, he subpoenaed RRD, and supposedly received documents from RRD that "were substantively different than those Experian had disclosed itself." (Opp. at 9.) That too is untrue. In preparation for its deposition, Experian requested documents from RRD. (Reply Vogt Decl., ¶ 5; *see also* Declaration of Cynthia Wilkerson ("Wilkerson Decl."), ¶ 5.) As Ms. Wilkerson explained in her declaration, when RRD provided those documents to Experian, it highlighted the relevant information to this case, and included a column that totaled the thousands of records in the voluminous "Detail Report." (Wilkerson Decl., ¶ 5.) RRD produced to Plaintiff the identical documents it provided to Experian,

1 but without the yellow highlighting and added column. (*Id.*) In its moving papers, Experian attached both the complete "Detail Report," as well as the highlighted excerpt (for the Court's convenience.) (*Id.*) As the Court can see, there are not <u>any</u> "substantive[] differen[ces]." Finally, although Plaintiff fails to mention it, the reason why Experian moved to quash the original subpoena he served on RRD is because Plaintiff, in violation of the Code of Civil Procedure, never provided Experian with any notice of that subpoena. (*See* Dkt. No. 29.) While Plaintiff issued a new subpoena to RRD, he did not include any document requests. (Reply Vogt Decl., ¶ 2(d) and Ex. 3.) That is the reason why "RRD has not yet produced any responsive records." (Opp. at 9.) Plaintiff has done nothing to correct this error, *see* Reply Vogt Decl., ¶ 2(d), even though the discovery cut off is days away.

### IV. The "Lee Castens' (Sic) Declaration Is Inadequate" Excuse

Plaintiff argues that Mr. Carstens does not "sufficiently explain the nature of" the screen shots attached as Exhibits 1-4 to his declaration. (Opp. at 10.) Not so. In his declaration, Mr. Carstens explained how Experian's internal system sends electronic information to RRD. (Declaration of Lee Carstens ("Carstens Decl."), ¶¶ 5 & 6.) He further explained that a batch file containing the unique CAP ID that Experian assigned to Plaintiff's dispute was electronically transmitted from Experian to RRD on March 14, 2017. (*Id.*, ¶ 6.) He also attested that the screen shots attached as Exhibits 1-4 to his declaration reflect that transmission. (*Id.*) Ms. Wilkerson, in turn, attested that RRD received that electronic transmission from Experian on March 14, 2017, which contained the CDF bearing Plaintiff's unique CAP ID. (Wilkerson Decl., ¶¶ 4-5.) In other words, the facts set forth in Mr. Carstens' declaration are clear and irrefutable.

### V. The "Other Consumers Claim To Have Not Received Their CDFs" Excuse

Next, Plaintiff contends that this motion should be denied because other consumers claim to have not received their CDFs in the mail. (Opp. at 9.) Even assuming these declarations are accurate, they have nothing to do with the instant motion, which focuses on whether Experian sent *Plaintiff's* CDF to him. As Experian's motion demonstrated, and Plaintiff does not contest, Experian, though its vendor, mailed Plaintiff his CDF on March 16, 2017. (Motion at 5-7.)

## VI. The "I Did Not Get My CDF In the Mail" Excuse

Plaintiff's opposition also repeats his assertion that he "never received any mailing of the reinvestigation results that Experian claims to have sent[.]" (Opp. at 9.) But as Experian's motion demonstrated, the law does not require receipt. Instead, Experian's obligation under the FCRA ends when reinvestigation results are *sent* to the consumer. (Motion at 3, 7-8, citing *Podell*, 112 F.3d at 103 ("[T]he precise question 'is not whether [Podell] *received* [the confirmation letter], but whether TRW *sent* it.'") (Italics in original)); *Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1034 (1996) ("It is useful to reflect that the question is not whether plaintiff received that communication, but whether TRW sent it."); *McCelland v. Experian Info. Sols., Inc.*, No. 04 C 5686, 2006 WL 2191973, at *6 (N.D. Ill. July 28, 2006) (same).

Plaintiff does not cite *any* contrary authority. Indeed, he cites no authority whatsoever. Instead, he brands these directly on-point cases as "non-binding" and "distinguishable." (Opp. at 17-18.) While it is true that these cases are not within the Ninth Circuit, they nonetheless address the precise legal issue presented here—namely: Does the FCRA require a consumer reporting agency to establish that reinvestigation results were "sent" or "received?" As every one of these cases holds, a consumer reporting agency's duty under the FCRA ends when the reinvestigation results are *sent* to the consumer. The undisputed facts establish that those results were sent to Plaintiff on March 16, 2017. Accordingly, his declaration, which repeats his allegation that he did not receive his results, is legally irrelevant.

Plaintiff argues that, "even if the Court is inclined to look to the *Podell* and *McClelland* decisions for persuasive guidance, those cases are thoroughly distinguishable." (Opp. at 18.) But the distinguishing features that Plaintiff attempts to draw are no distinctions at all:

- He argues that there was no "third-party mailing vendor" in *Podell*. That is a distinction without a difference. The point is that the results indisputably were mailed.

- He contends that there were no "fundamental flaws" in the contract between the defendant and its vendor. But the supposed "flaws" that Plaintiff points to here—that the contract between Experian and RRD supposedly does not cover the mailing of CDFs—is defeated by the very terms of the very contract Plaintiff relies upon. More fundamentally, it is undisputed that

1  Plaintiff's CDF was mailed within the time period prescribed by law, and that Experian paid the
2  U.S. Postal Service for that mailing.

3  • Plaintiff asserts that Experian's 30(b)(6) deponent "admitted that its own internal
4  Disclosure Log and DR Log did not indicate the precise date of mailing." This is no distinction at
5  all. Those records show when Experian transmitted Plaintiff's CDF to RRD for printing and
6  mailing, and RRD's records establish when Plaintiff's CDF was deposited in the mail.

7  • Finally, Plaintiff argues that Experian "originally claimed in its Interrogatory
8  responses that [the] mailing had occurred on March 14, 2017." Not so. Experian sent Plaintiff's
9  CDF for mailing on March 14, 2017, by transmitting the CDF to RRD. Experian's contract with
10 RRD ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Plaintiff's Appendix, Ex. 5,
11 Attachment A at 4 [Table A].) In preparation for its deposition, RRD informed Experian of the
12 precise date—*i.e.*, March 16, 2017—that Plaintiff's CDF was delivered to the U.S. Postal Service
13 for mailing. Accordingly, in advance of its deposition, Experian amended its interrogatory response
14 to provide that information to Plaintiff. (Plaintiff's Appendix, Ex. 8 at 13.)

15 Thus, the undisputed fact remains: Plaintiff's CDF was mailed on March 16, 2016.

16 **VII.  The "Experian's Motion Does Not State Which Facts Are 'Disputed'" Excuse**

17 Plaintiff argues that this well-taken motion should be denied because Experian's statement
18 of material facts does not say which facts are "disputed." (Opp. at 9.) The argument lacks merit.
19 Experian's motion faithfully follows Local Rule 56-1, by including "a concise statement setting
20 forth each fact material to the disposition of the motion that the party claims is or is not genuinely
21 in issue, citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer,
22 admission, or other evidence on which the party relies." All of the facts set forth in the Statement
23 of Material Facts are undisputed, and remain undisputed.

24 Citing this Court's decision in *John Bordynuik Inc. v. JBI, Inc.*, No. 2:13–cv–01463–RFB–
25 VCF, 2015 WL 153439, at *3 (D. Nev. Jan. 13, 2015), Plaintiff argues that Experian's motion does
26 not comply with Local Rule 56-1 because it does not "clarify 'which facts may be disputed or
27 undisputed.'" (Opp. at 18.) Plaintiff misreads that case. In *Bordynuik*, the moving party's motion
28 simply contained a "Statement of Relevant Facts," as opposed to a "Statement of Facts" and a

1  separate "Statement of Material Facts," as required under Local Rule 56-1.  *Bordnuik*, 2015 WL
2  153439, at *3.  This failure made it impossible for the Court to determine which facts the moving
3  party contended were "undisputed" for purposes of summary judgment.  That, of course, is not the
4  case here.  Experian's motion has a Statement of Facts.  But it also has a separate "Statement of
5  Material Facts," which identifies the undisputed facts that are material to this motion, with specific
6  record citations to support those facts, as required by Local Rule 56-1.

7         The only material fact that Plaintiff purports to dispute is Material Fact No. 6: "The CDF
8  for Sloane's dispute was mailed to him on March 16, 2017." (Opp. at 9.)  But the evidence Plaintiff
9  relies upon does not create a triable issue of material fact:

10      •   He claims, incorrectly, that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (*Id.*)  In point of fact, ▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮ (Plaintiff's Appendix, Ex. 5 at Attachment A.)

15      •   Plaintiff argues that Experian "has produced insufficient evidence and testimony to
16 clarify its contractual relationship with RRD or whether it is entitled to benefit from any purported
17 contract between RRD and Experian Services." (Opp. at 9.)  Nonsense.  Experian produced its
18 complete contract files with RRD, and designated a witness (Mary Methvin) to testify regarding
19 Experian's relationship with RRD. (Methvin Dep. at 63-64, 70-71.)

20      •   Plaintiff contends that Experian's Disclosure Log and DR Log "do not reflect the
21 fact of any mailing." (Opp. at 9.)  Again, not so.  The Disclosure Log and DR Log establish that
22 Experian, on March 14, 2017, transmitted Plaintiff's CDF to its print vendor, RRD, for mailing.
23 (*See* Declaration of Mary Methvin ("Methvin Decl."), Dkt. No. 40, Ex. 2 and ¶¶ 7-10.)  RRD's
24 records establish that RRD:  (1) received the electronic transmission of Plaintiff's CDF from
25 Experian on March 14, 2017; and (2) mailed Plaintiff's CDF on March 16, 2017. (Methvin Decl.,
26 ¶ 10; Wilkerson Decl., ¶¶ 5-9 and Exs. 1-4; Carstens Decl., ¶¶ 6-7.)  Experian's records confirm
27 that Experian paid the U.S. Postal Service for that mailing. (Carstens Decl., ¶ 7 and Ex. 5.)
28

• Plaintiff argues that Experian does not "sufficiently explain the nature of th[e] records" attached to Mr. Carstens declaration establishing that Plaintiff's CDF was transmitted to RRD for mailing. (Opp. at 10.) Again, not so. Mr. Cartsens explained: (1) how Experian internal system sends electronic information to RRD, *see* Carstens Decl., ¶¶ 5 & 6; (2) that ███████████████████████████████████████████████████████████████████████████████████, *see id.*, ¶ 6; and (3) that the screen shots attached as Exhibits 1-4 to his declaration reflect that transmission. (*Id.*) RRD, in turn, confirmed that the facts set forth in Mr. Cartens' declaration are unassailable, attesting that RRD received the electronic transmission containing Plaintiff's CDF from Experian on March 14, 2017. (Wilkerson Decl., ¶¶ 4-5.)

• Plaintiff argues that the records that RRD produced in response to Plaintiff's subpoena are different from those that RRD provided to Experian in preparation for Experian's testimony in this case. (Opp. at 10.) Not so. As Ms. Wilkerson explains, save for the yellow highlighting of relevant information, and the insertion of a column that added the thousands of records as part of Job No. 7062, the documents are identical. (Wilkerson Decl., ¶ 5.)

In short, nothing in Plaintiff's opposition creates a triable issue of material fact to defeat summary judgment.

**VIII.   The "I Need More Discovery" Excuse**

As his last line of defense, Plaintiff contends that, before the Court rules on Experian's motion, he should be allowed to conduct additional discovery under Rule 56(d). For multiple independent reasons, the Court should reject that request.

<u>First</u>, the law in the Ninth Circuit is clear: A party opposing summary judgment is not entitled to additional discovery under Rule 56(d) "if it fails diligently to pursue discovery before summary judgment." *Family Home and Finance Center, Inc. v. Federal Home Loan Mortg. Corp.*, 525 F.3d 822, 827-28 (9th Cir. 2008) (quoting *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir. 1989); *see also Volvo Const. Equip. Rents, Inc. v. NRL Rentals, LLC*, No. 2:09-CV-32 JCM LRL, 2011 WL 2490999, at *3 (D. Nev. June 22, 2011) ("[T]he court need not grant the nonmovant's request when the nonmovant has failed to thoroughly examine discovery

opportunities in the time available, or has not acted in due diligence in their discovery efforts."); *Krause v. Nevada Mut. Ins. Co.*, No. 2:12-CV-00342-JCM, 2014 WL 428675, at *4 (D. Nev. Feb. 4, 2014), aff'd, No. 2:12-CV-342 JCM CWH, 2014 WL 3592655 (D. Nev. July 21, 2014) ("Not only does the party requesting Rule 56(d) relief bear the burden to proffer sufficient facts to show that the sought after evidence exists and would prevent summary judgment, it must also show that it was diligent in pursuing its previous discovery opportunities."). Here, on each item for which Plaintiff claims to need further discovery, the evidence establishes that Plaintiff was dilatory:

- He claims that Experian "never produced a competent 30(b)(6) witness to testify regarding the terms and conditions of the 'contract' between RRD and Experian Services," *see* Opp. at 20, but he never propounded a 30(b)(6) topic on that issue, *see* Reply Vogt Decl., ¶ 2(a) and Ex. 1, and the discovery cutoff is days away—*i.e.*, November 6, 2017. Moreover, on August 18, 2017, Experian expressly offered to provide such a witness to Plaintiff. (*See* Opp. at 9; *see also* Methvin Dep. at 165-166, 177-179.) Yet, over two months later, Plaintiff still has not served Experian with a deposition notice on such topic; or, upon receiving Experian's motion for summary judgment, did anything at all to seek that discovery. (*See* Reply Vogt Decl., ¶ 2(a).) Further, if Plaintiff believed that his prior 30(b)(6) deposition notice covered this topic, he should have filed a motion to compel to obtain such a witness, which he did not do. In the Ninth Circuit, a party opposing summary judgment is not entitled to relief under Rule 56 where it "failed to file timely motions to compel and extend discovery." *Family Home*, 525 F.3d at 827; *Mackey*, 867 F.2d at 524; *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for the denial" of a request under Rule 56(d).).

- He contends that Experian has not produced the agreement between Experian Services, Inc. and Experian Information Solutions, Inc. (Opp. at 20.) But here too, Plaintiff *never* sought that contract in discovery, and *never* pursued it after taking Experian's deposition in mid-August. (*See* Reply Vogt Decl., ¶ 2(b) and Ex. 3.) Furthermore, Experian filed its motion for summary judgment on September 28, 2017. In the over one month that has ensued since Experian filed its motion—and with a discovery cutoff just days away—Plaintiff still has not done *anything* to pursue such agreement. (*Id.*, ¶ 2(b).) Moreover, if Plaintiff believed that his earlier document

13

requests required the production of that agreement, he should have filed a motion to compel, which he also did not do.

- He claims that, three days before moving for summary judgment, Experian produced "code-heavy, non-intuitive documents," which then were attached as exhibits to Mr. Carstens' declaration. (Opp. at 20.) Plaintiff asserts that "[f]urther targeted discovery, and perhaps a limited 30(b)(1) deposition, are essential." (Opp. at 20.) Such discovery is so "essential" that Plaintiff, in the over 30 days that have passed since Experian filed its motion, did absolutely *nothing* to pursue it. (Reply Vogt Decl., ¶ 2(c).) That is the textbook definition of dilatoriness, which compels rejection of Plaintiff's request under Rule 56(d).

- He contends that he had to re-subpoena RRD's records because, in opposing Experian's motion to quash, he agreed not to use the records he initially obtained from RRD in violation of the Federal Rules of Civil Procedure. (Opp. at 19-20; Reply Vogt Decl., ¶¶ 6-7.) But the new subpoena that Plaintiff propounded upon RRD did not have any document requests. (Reply Vogt Decl., ¶ 2(d) and Ex. 3.) The return date on the subpoena was October 2, 2017. (*Id*.) Yet, when RRD did not produce any records on October 2, 2017, Plaintiff sat on his hands once again. (*Id*.) That is, even with Experian's motion for summary judgment pending, Plaintiff did absolutely nothing to pursue that discovery from RRD. (*Id*.) Nor, for that matter, has Plaintiff ever sought to depose anyone from RRD at any time in this case. (*Id*.)

Second, even if Plaintiff was not dilatory, Rule 56(d) "*requires affidavits setting forth particular facts expected from the movant's discovery*." *Mackey*, 867 F.2d at 523-24 (emphasis added) (citing *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)). That is, a Rule 56(d) motion "must show *how additional discovery would preclude summary judgment* and why a party cannot immediately provide 'specific facts' demonstrating a genuine issue of material fact." *Id*. (emphasis added); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 966 (9th Cir. 2009) (same); *Multibank 2009-1 CML-ADC Venture, LLC v. McMaster*, No. 2:10-CV-697 JCM GWF, 2011 WL 3047487, at *2 (D. Nev. July 25, 2011) ("Federal Rule of Civil Procedure 56(d) requires a party to identify by affidavit the specific facts that further discovery would reveal, and explain why those facts preclude summary judgment."). Although Plaintiff's counsel

submitted a declaration, he does not attest as to the "particular facts expected from [his client's] discovery." *Id*. Nor, does he attest how "additional discovery would preclude summary judgment." *Id*. Instead, he says that his client would like to take further discovery, which he claims is "critical" to the case "to respond to Experian's motion for summary judgment." (Clark Decl., ¶¶ 11-27.) That is insufficient. *Barela v. City of Woodland*, 358 Fed.Appx. 8572009 WL 4908032, at *1 (9th Cir. 2009) ("Barela states merely that the information is 'essential to establish conspiracy, pattern conduct damages, and collusion.' He did not 'show how additional discovery would preclude summary judgment [against the municipal defendants] and why [he could not] immediately provide 'specific facts' demonstrating a genuine issue of material fact.'").

In short, because Plaintiff does not come close to satisfying his obligation under Rule 56(d), his request to delay resolution of this dispositive motion should be rejected.

## CONCLUSION

Although Plaintiff seeks to delay resolution of this dispositive motion to conduct "further discovery," he offers no explanation for his lack of diligence in pursuing such discovery earlier on in the case. Nor, in the words of the Ninth Circuit, does he even attempt to explain "how additional discovery would preclude summary judgment." *Barela*, 8572009 WL 4908032, at *1. The reason for this omission is obvious: No amount of additional discovery will ever change the fact that Plaintiff's CDF was mailed on March 16, 2017, and Experian paid the U.S. Postal Service for the cost of that mailing. Because the undisputed record evidence establishes that Experian sent Plaintiff the results of his reinvestigation, his claims under the FCRA fail, and summary judgment should be entered in Experian's favor.

Dated: November 2, 2017

By: */s/ Jennifer L. Braster*
Jennifer L. Braster
Nevada Bar No. 9982
NAYLOR & BRASTER
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145

*Attorneys for Defendant Experian Information Solutions, Inc.*

15

# CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am an employee of NAYLOR & BRASTER and that on this 2nd day of November 2017, I caused the document **DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be served through the Court's CM/ECF system addressed to:

David H. Krieger, Esq.
Haines & Krieger, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, NV  89123
Email: dkrieger@hainesandkrieger.com

Sean N. Payne
Payne Law Firm LLC
9550 S. Eastern Ave., Suite 253-A213
Las Vegas, NV  89123
Email:  seanpayne@spaynelaw.com

Matthew I. Knepper
Miles N. Clark
Knepper & Clark, LLC
10040 W. Cheyenne Ave. Suite 170-109
Las Vegas, NV 89129
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

*Attorneys for Plaintiff*

                                        /s/ Jennifer L. Braster
                                        An Employee of NAYLOR & BRASTER